

**SIGNED this 22nd day of April, 2026**

_Nicholas W Whittenburg_
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Selcuk Ahmet Tombul** | ) | **No. 1:26-bk-10223-NWW** |
| | ) | **Chapter 11, Subchapter V** |
| **Debtor** | ) | |

## M E M O R A N D U M

This case is before the court on the United States trustee's timely objection to the debtor's election to proceed under subchapter V of chapter 11.[1] The debtor opposes and prefers to remain in subchapter V. At a hearing conducted on April 16, 2026, the parties confirmed that the only point of contention is whether the debtor was "engaged in commercial or business activities" on the petition date.

---

[1] Federal Rule of Bankruptcy Procedure 1020(b) requires that any objection to the debtor's designation be filed within thirty days after the conclusion of the meeting of creditors. Here, the meeting was concluded on March 6, 2026. The United States trustee objected eighteen days later on March 24, 2026.

At the hearing, the parties acknowledged that there were no factual issues requiring an evidentiary hearing and that the parties had fully briefed the one legal issue. The court then took the matter under advisement. For the reasons stated in this memorandum, the court sustains the United States trustee's objection to the debtor's election of subchapter V of chapter 11.

## I.    Factual and Procedural Background

This case was filed on January 27, 2026. On the statement of financial affairs, the debtor disclosed that in 2026, and for all of 2025, his income came from wages. In 2024, his income came from operating a business. He also stated that his debts were not primarily consumer debts.

The debtor is a cardiologist. Sometime before this case began, he was the sole owner of Chattanooga Heart and Rhythm Center PLLC ("CHRC"). The debtor person-ally guaranteed virtually all of CHRC's debts.

CHRC ceased operations no later than in January 2025 and no longer has employees. Since then, the debtor has been employed as a W-2 wage-earning employee. As of the petition date, CHRC had no assets. Importantly, as of the petition date, the debtor had no interest in his current employer's business.

Nevertheless, the debtor continues to own 100% of CHRC. Because he person-ally guaranteed that business's loans, he maintains that he is addressing his personal liability for CHRC's business debts through this subchapter V bankruptcy case rather than through litigation in state court.

- 2 -

**II.    Analysis**

Section 1182(1) of the Bankruptcy Code states that "debtor" is defined as a "small business debtor." Therefore, per the definition of a "small business debtor" in Section 101(51D)(A), whether a debtor is eligible for subchapter V is determined by four elements:

1)    The debtor is a person,

2)    Engaged in commercial or business activities,

3)    With noncontingent liquidated secured and unsecured debt under $3,424,000.00; and

4)    That debt is at least 50% from the debtor's commercial or business activities.

A debtor has the burden of establishing eligibility for subchapter V. *In re Evergreen Site Holdings, Inc.*, 652 B.R. 307, 316 (Bankr. S.D. Ohio 2023) (collecting cases). The parties agree that elements 1, 3, and 4 are not at issue. Only element 2 is contested. The debtor maintains that he has satisfied his burden respecting that element. Specifically, he argues that, despite the fact that CHRC has no assets to administer and is not an operating entity and that 100% of the debtor's income is derived from his employment by another medical association, he is "engaged in commercial or business activities" because he is attempting to discharge or otherwise deal with his personal liability for the debts of CHRC.

There is no controlling authority in the Sixth Circuit that defines the phrase "engaged in commercial or business activities." Lacking precedent and a statutory definition, the court turns to the plain meaning of the phrase's terms. *See Truck Ins.*

- 3 -

*Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 278 (2024) (applying ordinary dictionary meaning of terms).

The phrase "engaged in commercial or business activities" is easily separated into two component parts: (1) engaged in, and (2) commercial or business activities. The phrase "engaged in" is clear. To qualify for bankruptcy relief as a small business debtor, the debtor must, at the time of the filing of the petition, be presently engaged in commercial or business activities. *Nat'l Loan Invs., L.P. v. Rickerson (In re Rickerson)*, 636 B.R. 416, 422–25 (Bankr. W.D. Pa. 2021).

Turning to what is meant by "commercial or business activities," courts have reached varying conclusions. For example, in *In re Johnson*, the court found that the plain meaning of the phrase "person engaged in commercial or business activities" is "a person engaged in the exchange or buying and selling of economic goods or services for profit." No. 19-42063-ELM, 2021 WL 825156, at *8 (Bankr. N.D. Tex. Mar. 1, 2021). That court refused to allow employees to proceed under subchapter V because the employees were not operating a business for the employees' profit. *Id.* Because employees work for a wage or salary, their income does not turn on the profitability of their employer.

The emerging majority of courts to address whether a debtor is engaged in commercial or business activities answer that question under a totality of the circumstances analysis. *See, e.g.*, *In re Stevens*, 667 B.R. 428, 439 (Bankr. S.D. W.Va. 2025) (collecting cases). That approach "involves scrutinizing the debtor's activities immediately before and after the petition date and examining the debtor's conduct and intent" to determine whether there is sufficient commercial or business activity to enable

- 4 -

eligibility for subchapter V. *Id.* (citing *In re Ikalowych*, 629 B.R. 261, 283 (Bankr. D. Colo. 2021)).

When courts have applied the totality of the circumstances analysis and found that a debtor was engaged in commercial or business activities so that the debtor was eligible for subchapter V, those courts found more activity than merely seeking to discharge business related debts. *See, e.g.*, *In re Fama-Chiarizia*, 655 B.R. 48, 70 (Bankr. E.D.N.Y. 2023) (rental property income and active litigation of a counterclaim); *In re Offer Space, LLC*, 629 B.R. 299, 305–06 (Bankr. D. Utah 2021) (shuttered debtor had active bank accounts, accounts receivable, and potential counterclaims); *In re Blue*, 630 B.R. 179, 190 (Bankr. M.D.N.C. 2021) (W-2 debtor continued part-time consulting with clients from defunct business); *In re GCPS Holdings, LLC*, No. 24-32646, 2024 WL 4847831, at *3 (Bankr. S.D. Tex. Nov. 20, 2024) (active lease, bank accounts, marketing, and litigation); *In re Robinson*, No. 22-02414-KMS, 2023 WL 2975630, at *4 (Bankr. S.D. Miss. Apr. 17, 2023) (maintenance and improvement of property, management of assets, pursuit of buyer for business).

The most favorable case law for the debtor found that W-2 employment alone was sufficient to render a debtor engaged in commercial or business activities. *See Ikalowych*, 629 B.R. at 286 (holding that a debtor was engaged in business activities just by being a W-2 employee despite having no ownership interest in current employer). That opinion tends to be viewed as an outlier, however, and has been rejected by the majority of courts that have considered it. *See, e.g.*, *In re Wilson*, 666 B.R. 828, 837 (Bankr. M.D. Ga. 2024) (collecting cases). This court likewise does not find

- 5 -

persuasive *Ikalowych*'s broad interpretation of being engaged in commercial or business activities.

The debtor relies heavily on an opinion finding that a debtor's defense of a state court lawsuit involving a defaulted commercial lease that the debtor guaranteed personally was sufficient winding down activity to satisfy the requirement that a subchapter V debtor be engaged in commercial or business activities. *In re Hillman*, No. 22-10175, 2023 WL 3804195, at *4 (Bankr. N.D.N.Y. June 2, 2023). That case is distinguishable, though, because that debtor disclosed on her statement of financial affairs that the lawsuit was pending. Here, however, the debtor disclosed that all litigation was concluded on the petition date, no appeal had been filed, and he was merely consulting with legal counsel about a possible next step. Further, even absent that distinction, the court does not find the reasoning of *Hillman* persuasive. Allowing a debtor to proceed under subchapter V merely because he personally guaranteed the debts of a nonoperating business would render the requirement that the debtor be presently engaged in commercial or business activities meaningless.

The court notes that in its research it found one case holding that a debtor's "continuing obligation on personal guarantees of their defunct companies' business debts on the Petition Date qualifies as sufficient 'commercial or business activities' to attain Subchapter V eligibility." *Stevens*, 667 B.R. at 441. Even in that case, though, the debtors were also collecting rent through the petition date on a property that was foreclosed upon one day after the petition date, and they were actively negotiating with creditors about repaying debts. At some point since closing CHRC, the debtor forwarded former clients to his new employer, but the record does not indicate that he

- 6 -

received any compensation for those referrals beyond his regular W-2 wages. To hold that those referrals amounted to being engaged in commercial or business activities without any financial interest in them would be equivalent to nullifying the plain meaning of "engaged in" so that all the debtor needed to satisfy would be the subchapter V debt limit. Taking the statute at its plain meaning, such an interpretation would be too broad, and the court does not elect to interpret it so.

Here, the debtor had personally guaranteed CHRC's debts, but on (and even around) the petition date, he was not taking any action that amounted to being engaged in commercial or business activities. CHRC had been closed for the prior year, there were no employees, no assets to liquidate, leased property had been returned, and litigation had been concluded. He had moved on to W-2 employment with a business in which he has no ownership interest. Under those undisputed facts, the court need not decide definitively whether to adopt a totality of the circumstances analysis for determining whether a debtor is "engaged in commercial or business activities." Applying any approach, as of the petition date, the debtor does not qualify for relief as a "small business debtor."

Having determined that the debtor is ineligible for bankruptcy relief as a small business debtor, by order entered contemporaneously with this memorandum, the United States trustee's objection shall be sustained.

# # #